UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| **KOLALA VASUDEVA MURTHY, M.D.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 08-CV-2015 |
| ) | |
| **ERIC K. SHINSEKI, SECRETARY OF** ) | |
| **DEPARTMENT OF VETERANS AFFAIRS,**[1] ) | |
| ) | |
| **Defendant.** ) | |

**OPINION**

This case is before the court for ruling on the Motion for Summary Judgment (#41) filed by Defendant, Eric K. Shinseki. This court has carefully reviewed Defendants' Motion and supporting Exhibits, the Response (#72) and exhibits filed by Plaintiff, Kolala Vasudeva Murthy, M.D., Defendant's Reply (#77) and Plaintiff's Notice of Recent Supplemental Authority (#89). Following this careful and thorough review, Defendant's Motion for Summary Judgment (#41) is GRANTED.

FACTS[2]

On November 20, 2000, Plaintiff was hired as a cardiologist at the Veterans Administration Hospital in Danville, Illinois (VA Hospital). Plaintiff was born in 1937 and was 63 years old at the time he was hired. At the VA Hospital, the Director is the head of the facility. The other relevant management positions are Chief of Staff, Deputy Chief of Staff, and section chiefs who report to the Chief of Staff. The Chief of Staff at the VA Hospital was Dr. Sarita Prabhudesai (Dr. Desai). She

---

[1] The clerk will be directed to substitute Eric K. Shinseki, the current Secretary of the Department of Veterans Affairs, for Gordon H. Mansfield, as the proper Defendant in this case.

[2] This court has carefully reviewed Defendant's extremely lengthy Statement of Undisputed Facts as well as Plaintiff's lengthy recitation of facts. This court has attempted to limit its discussion of the facts to those facts which are truly material to the issues in this case, based upon the applicable case law. This court has not included the unsupported speculation included in Plaintiff's recitation of facts.

had been Chief of Staff since January 2000. The section chief that Plaintiff, as a cardiologist, reported to was the Chief of Medical Service. Dr. William Marshall was Chief of Medical Service from 2000 until the spring of 2005, when he became Deputy Chief of Staff. When Dr. Marshall moved to his new position, the position of Chief of Medical Service became open. Dr. Harminder Singh Chani became the interim Chief of Medical Service. Dr. Desai supervised Dr. Chani while he was interim Chief of Medical Service. Dr. Chani testified that, while he was acting Chief of Medical Service, he had frequent contact with Dr. Marshall and Dr. Marshall also had some supervisory authority over him.

Plaintiff testified that, in May 2005, before it had been announced that Dr. Chani had been selected to act as interim Chief of Medical Service, Dr. Marshall told him that Dr. Chani would be the acting Chief. Plaintiff testified that he was stunned by this news and Dr. Marshall then asked him, "So, when are you planning on retiring?"

The procedure at the VA Hospital for filling staff positions is that the human resources department advertises the available position and forwards to the relevant service chief a list of qualified candidates. Performance based interviews are then held with the qualified candidates. The candidates for the Chief of Medical Service position were Plaintiff, age 68, Dr. Chani, age 39, Dr. Bhaskar, age 55, Dr. Gopinath, age 42, and Dr. Natarajan, age 63. It is undisputed that all five candidates were qualified for the position.

Interviews of the candidates were scheduled and panel members were selected for the interviews. Dr. Desai personally put together the selection interview panel for the position of Chief of Medical Service. The members of the interview panel were: Dr. Desai; Dr. Robert Coleman, Chief of Surgery; Dr. William Roberts, Chief of Diagnostic Imaging; Dr. Usha Paruchuri (Dr. Par),

Chief, Geriatrics & Extended Care Service; and Suzanne Slovacek, Chief of Pharmacy. Dr. Marshall was not on the interview panel. Plaintiff testified that Dr. Coleman had made some unprovoked attacks against him related to patient care. Plaintiff did not think Dr. Coleman should have been included on the selection panel. Plaintiff testified, however, that none of Dr. Coleman's disagreements with him had anything to do with his age.

Dr. Desai selected 10 typed interview questions for the interviews of the five applicants for the Chief of Medical Service position. Dr. Desai testified that each of the applicants was asked the same questions. The panel met prior to the interviews and Dr. Desai assigned each panel member specific questions to ask from the list of questions. A question was added to the bottom of the list of questions concerning research to be asked by Dr. Roberts. Dr. Roberts testified that the VA Hospital was attempting to get its research program accredited. Dr. Roberts testified that Dr. Desai asked him to ask each candidate "in what way would they support a research project and what do they think they could do about that at this institution." Dr. Roberts testified that it was "relevant to find out how would this person approach that problem of research in a small institution that obviously is not extensively funded . . . but should still be maintaining some things to keep an academic flavor and to give the residents some opportunity to develop critical thinking along the lines of scientific medicine." The last printed question on the list of questions was "Why did you want to apply for this job?" This question was asked by Dr. Desai. Dr. Desai testified that, during the interview process, everything was handled the same for each candidate and no candidate was asked a different kind of question than another.

In order to prepare for his performance based interview, Dr. Chani went to the research and education department in the library at the VA Hospital and discussed how performance based

interviewing works. Dr. Chani also reviewed samples of performance based interview questions included in a list of about 900 sample questions. Plaintiff testified that he did not have a copy of the list of questions during his interview and stated in his Declaration that he "was not given any instruction about how to answer the interview questions."

At each interview, the candidate was asked the listed questions and the panel members scored the response. Dr. Roberts testified that the scoring system was based on the relevance of the answer and the extent to which it included concrete examples from the candidate's own experience. The performance based interview process was designed to elicit answers showing how the candidate would apply his or her experience to the question being asked. Each question was scored on a point system of one to ten points. Candidates received more points if they gave answers that pertained to the question with examples based on the candidate's experience. In addition, specific answers got scored higher than responses which did not answer the question. Each member of the panel testified at his or her deposition that the scores were based on the candidate's responses to the questions and were not based upon the candidate's age. The panel members also all testified that, in general, Plaintiff gave short answers to the questions which were lacking in specifics. According to Plaintiff, Dr. Coleman left the interview room for a period of time during Plaintiff's interview, but still scored Plaintiff's answers.

Dr. Roberts testified that Plaintiff answered the question regarding research by stating "we really don't do research here." Dr. Roberts testified that Plaintiff's answer was true. However, the panel was looking for what the VA Hospital could do to use research to support the residents, whether there were minor projects to help the residents learn some basic techniques to be done within the context of their duties at the VA Hospital. Plaintiff testified that, instead of saying "Why

do you want to apply for this job?" Dr. Desai said "Why, after all these years, do you want this job, now?" Plaintiff testified that he answered the question by saying "I've been at the patient's bedside taking direct care of the patients all these years, so I thought that I would like to see how the administrative part of the responsibilities would be." Several panel members testified that they did not give Plaintiff many points for this answer because the answer did not indicate what Plaintiff would do for the VA Hospital.

Each panel member filled out a score sheet for each interview. Dr. Par wrote on the score sheet she filled out for Plaintiff, "Has the maturity, but not experience." At the end of each interview, Dr. Desai's secretary put the scores on a spreadsheet. After the last interview, the candidates were ranked in order based upon their scores on the interview. The candidate with the best score got the job. Following the interviews of the five candidates for the Chief of Medical Service position, the candidates received the following total scores: (1) Dr. Chani, 376 points; (2) Dr. Natarajan, 332 points; (3) Dr. Bhaskar, 305 points; (4) Dr. Gopinath, 278 points; and (5) Plaintiff, 114 points. Each of the five panel members gave Plaintiff the lowest score of the five candidates. Dr. Chani had the highest score and received the promotion to Chief of Medical Services. Plaintiff received notice that he was not selected for the position around June 1, 2006.

PROCEDURAL HISTORY

On June 20, 2006, Plaintiff filed an EEO administrative complaint alleging that his non-selection for the position of Chief of Medical Services was based upon age discrimination. On October 9, 2006, Plaintiff filed another EEO Administrative complaint alleging that he received a $4,000.00 pay raise rather than a $10,000.00 pay raise in retaliation for filing his first EEO

complaint.

On October 15, 2007, a final agency decision was sent to Plaintiff from the Department of Veterans Affairs Office of Employment Discrimination Complaint Adjudication in Washington, D.C. The decision stated that Plaintiff failed to prove by a preponderance of the evidence that age was a factor in the decision not to select him for the Chief of Medical Services position. The decision also stated that Defendant had provided evidence to show that there was no possible link between Plaintiff's EEO claim concerning his non-selection for the position and the decision on the amount of his pay raise. The decision stated that Plaintiff's pay was commensurate with other cardiologists in the medical center and the local area.

On November 1, 2007, Plaintiff filed a Complaint for Age Discrimination (#1) in the Southern District of Indiana. On January 18, 2008, the case was transferred to this court. Plaintiff alleged that he did not receive the promotion to the position of Chief of Medical Services based upon age discrimination, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.

On June 1, 2009, Defendant filed a Motion for Summary Judgment (#41) and also filed, under seal, numerous supporting exhibits. Defendant argued that, based upon the undisputed facts in this case, Plaintiff cannot show that he was the victim of age discrimination. Defendant argued that the facts show that Defendant's promotion decision was not based upon Plaintiff's age but was based upon the fact that Plaintiff interviewed poorly and did not receive the highest score following the interview process. On July 6, 2009, Plaintiff filed, under seal, a lengthy Response (#72) and additional exhibits, under seal (#73), including Plaintiff's Declaration. Defendant filed a Reply, under seal (#77), on July 14, 2009. On March 15, 2010, Plaintiff filed a Notice of Recent

Supplemental Authority (#89), which has been considered by this court.

## ANALYSIS

### I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).  The favor toward the nonmoving party does not extend to drawing inferences supported only by speculation or conjecture, however.  See Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008); Burwell, 213 F. Supp. 2d at 929; see also Kodish v. Oakbrook Terrace Fire Prot. Dist., ___ F.3d ___, 2010 WL 1838804, at *15 (7th Cir. 2010) ("a plaintiff cannot thwart summary judgment by asking a court to make inferences based on flights of fancy, speculations as to the defendant's state of mind, hunches, intuitions or rumors about matters remote from that experience").

Therefore, the nonmoving party cannot rest on the mere existence of an alleged factual dispute but "must present definite, competent evidence in rebuttal."  Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).  Summary judgment "is the 'put up or shut up' moment in

a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004) (citations omitted). Specifically, the nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex Corp., 477 U.S. at 322-23; see also Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004). A plaintiff must do more than "simply show that there is some metaphysical doubt as to the material facts." Faas v. Sears, Roebuck & Co., 532 F.3d 633, 640 (7th Cir. 2008), quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## II. AGE DISCRIMINATION CLAIM

The ADEA "makes it illegal to discriminate on the basis of age against federal employees who are at least 40 years old." Barney v. White, 2001 WL 1776885, at *10 (S.D. Ind. 2001). The ADEA specifically states that all personnel actions affecting employees of the federal government who are at least 40 years of age "shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The United States Supreme Court recently held that it is not sufficient for a plaintiff in an ADEA case to show that age was a motivating factor and must, instead, demonstrate that age was the "but-for" cause of the challenged employment action. Gross v. FBL Fin. Servs., Inc., ___ U.S. ___, 129 S. Ct. 2343, 2352 (2009); see also Mach v. Will County Sheriff, 580 F.3d 495, 498 (7th Cir. 2009). However, the provision of the ADEA at issue in Gross, 29 U.S.C. § 623(a), applies to non-federal employers and involves different statutory language from 29 U.S.C. § 633a(a). See Torres v. McHugh, ___ F. Supp. 2d ___, 2010 WL 1289899, at *5 (D.N.M. 2010).

Plaintiff has therefore argued that the "but for" standard does not apply to federal employees suing under 29 U.S.C. § 633a(a), who may proceed using a mixed-motive analysis. See Fuller v.

Gates, 2010 WL 774965, at *1-2 (E.D. Tex. 2010). The court in Torres, however, concluded that the "but for" analysis was the proper one in a case involving a federal employee. Torres, 2010 WL 1289899, at *5-6; see also Shelley v. Geren, 2009 WL 3783159, at *3-4 (E.D. Wash. 2009); Frankel v. Peake, 2009 WL 3417448, at *4 (D.N.J. 2009); Guerrero v. Preston, 2009 WL 2581568, at *3-5 (S.D. Tex. 2009); Glenn v. Bair, 643 F. Supp. 2d 23, 28-29 (D.D.C. 2009); Wagner v. Geren, 2009 WL 2105680, at *4-5 (D. Neb. 2009). This court agrees with the majority of district courts who have addressed this issue and concludes that Plaintiff must demonstrate that his age was the "but for" cause of his non-selection for the Chief of Medical Service position.[3] See Barney, 2001 WL 1776885, at *10 (in a ruling prior to the Gross decision, the district court stated that the plaintiff had to prove that her age had a "but for" effect on her federal employer's decision).

Defendant has argued that it is entitled to summary judgment because Plaintiff cannot show age discrimination under either the direct or indirect method of proving age discrimination. The direct method requires a plaintiff to produce direct or circumstantial evidence that the employer's action was taken because of his age. See Mach, 580 F.3d at 499; Shaffer v. Am. Med. Ass'n, 2010 WL 1541643, at *5 (N.D. Ill. 2010). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." Nagle v. Vill. of Calumet Park, 554 F.3d 1106, 1114 (7th Cir. 2009). Direct evidence typically requires an admission of discriminatory animus. Mach, 580 F.3d at 499. Plaintiff has argued that he has direct evidence of discrimination, but this court concludes that none of the evidence Plaintiff points to can be considered direct evidence of discriminatory animus. However, "a plaintiff may

---

[3] This court notes, however, that Plaintiff's claim would fail under either a "but for" or a mixed motive standard because he has failed to show that age played any role in Defendant's decision. See Torres, 2010 WL 1289899, at *5-10.

also produce circumstantial evidence that establishes the employer's discriminatory motive through a longer chain of inferences." Mach, 580 F.3d at 499. This court will therefore consider whether the evidence relied upon by Plaintiff is sufficient to create an inference of discrimination based upon his age.

Plaintiff first points to Dr. Marshall's question to Plaintiff, "So, when are you planning on retiring?" Dr. Marshall's question to Plaintiff appears to be the type of remark which is insufficient to create an inference of discrimination. See Mach, 580 F.3d at 499 (comment that the plaintiff should be transferred to patrol because he was nearing retirement not sufficient); Pitasi v. Gartner Group, Inc., 184 F. 3d 709, 714-15 (7th Cir. 1999) (comments regarding retirement not sufficient to give rise to an inference of age discrimination). It is well settled that "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." Petts v. Rockledge Furniture LLC, 534 F.3d 715, 721 (7th Cir. 2008). A remark can raise an inference of discrimination when it is: (1) made by the decisionmaker; (2) around the time of the decision; and (3) in reference to the challenged employment action. Mach, 580 F.3d at 499; see also Petts, 534 F.3d at 721. A decisionmaker is the person "responsible for the contested decision." Long v. Teachers' Ret. Sys. of Ill., 585 F.3d 344, 351 (7th Cir. 2009), quoting Rogers v. City of Chicago, 320 F.3d 748, 754 (7th Cir. 2003). In this case, the interview panel scored the interviews of the five candidates and the person with the highest score received the promotion. Therefore, the five members of the interview panel were the "decisionmakers" in this case. It is undisputed that Dr. Marshall was not a member of the interview panel and cannot be considered a decisionmaker.

Therefore, in order for Dr. Marshall's remark to have any relevance in this case, Plaintiff

must show that Dr. Marshall exerted significant influence over the promotion decision so that his alleged discriminatory intent could be imputed to the members of the interview panel who made the decision. See Kodish, 2010 WL 1838804, at *15-16; Long, 585 F.3d at 351. Plaintiff has conceded that the test is whether Dr. Marshall provided input to the decisionmaker. See Mach, 580 F.3d at 499 (to succeed, a plaintiff must show that the person making the remark "had *some* influence over the employment decision" (emphasis in original)). Plaintiff has not provided any facts, but instead has relied on rampant speculation in an attempt to show that Dr. Marshall influenced the selection of the Chief of Medical Services. Plaintiff has mainly focused on Dr. Marshall's involvement in selecting Dr. Chani as interim Chief of Medical Services. Plaintiff is convinced that this gave Dr. Chani an advantage as far as the selection of a permanent Chief. The evidence does not support this, however. Dr. Chani was required to go through the same performance based interview process as the other candidates. The only advantage Dr. Chani may have had was he did extensive research regarding the interview process and was well prepared for his interview. This was obviously something Plaintiff could have done as well, but did not. Any advantage Dr. Chani had was not based upon age or the influence of Dr. Marshall. Plaintiff has also argued that Dr. Marshall had some sort of control over Dr. Desai. Suffice it to say there is absolutely no evidence in the record to support this argument.[4] This court concludes that the fact that Dr. Marshall was not a decisionmaker in this case dooms Plaintiff's argument that Dr. Marshall's comment about retirement provides evidence of age discrimination in this case. See Mach, 580 F.3d at 499.

Plaintiff also relies on his assertion that Dr. Desai asked him "Why, after all these years, do

---

[4] Amazingly, one of the facts Plaintiff relies on to support this argument is that Dr. Marshall "smiled with approval" when Dr. Chani told Dr. Marshall he was applying for the permanent position. According to Plaintiff, Dr. Marshall's smile to Dr. Chani "conveyed 'input' to Dr. Desai." This is completely unsupported and close to ridiculous.

you want this job, now?"[5]  Plaintiff contends that this was a comment about age made by a decisionmaker.  There are two problems with this argument.  First of all, the language used by Dr. Desai did not directly reference Plaintiff's age and seems more likely to be a reference to his years working as a cardiologist.  It is not enough that a plaintiff believes that the statement is a reference to age.  See Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 401 (7th Cir. 1997).  Second, the five members of the interview panel were the decisionmakers in this case and Dr. Desai was only one of the members of the interview panel.  Plaintiff has argued that the wording of Dr. Desai's question showed that she did not like Plaintiff's age and influenced the members of the interview panel not to promote Plaintiff.  This court concludes that this argument is based solely on hunch, speculation and conjecture.  All of the panel members testified that age was not a consideration and they scored the candidates based upon their answers to the interview questions.  This court concludes that Dr. Desai's wording of one question, which was not even a direct comment about age, is insufficient to call this into question.

Plaintiff also relies on Dr. Par's notation that Plaintiff "Has the maturity but not experience." This court agrees with Defendant that this cannot be considered evidence of age discrimination. First of all, Dr. Par's reference to "maturity" does not necessarily have anything to do with age. In Larimer v. Dayton Hudson Corp., 137 F.3d 497, 500-01 (7th Cir. 1998), the Seventh Circuit found that the district manager's comment that the plaintiff would not be promoted because she had "no young, fresh ideas" did not necessarily refer to age, noting that "common experience suggests that one's age has no necessary correlation to whether or not one's ideas are 'young' or 'fresh.'" This

---

[5] Dr. Desai testified that she asked Plaintiff the same question as the other candidates, "Why did you want to apply for this job?"  For purposes of summary judgment, this court accepts Plaintiff's version of the facts.

court concludes that common experience certainly suggests the same thing about maturity, which has no necessary correlation to age. See also Shaffer, 2010 WL 1541643, at *6 (comment regarding "future plans" had nothing to do with age). As noted previously, the fact that Plaintiff believes the notation was a comment about his age is not controlling. See Chiaramonte, 129 F.3d at 401; Shaffer, 2010 WL 1541643, at *6. Moreover, Dr. Par was only one of five members of the interview panel and there is no evidence that Dr. Par made any statement regarding "maturity" to the other panel members. While Plaintiff insists upon referring to it as a "comment," the evidence is that it was written on the score sheet Dr. Par completed during Plaintiff's interview.

This court has no trouble rejecting Plaintiff's argument that there are additional facts which provide circumstantial evidence of age discrimination. These additional facts are insufficient to raise any kind of an inference that the promotion decision had anything to do with Plaintiff's age. For example, Plaintiff argued that the placement of Dr. Coleman on the panel shows that Dr. Desai engaged in a "set up job" against Plaintiff because of his age. This argument can only be considered a "flight of fancy." Plaintiff testified that he had some conflicts with Dr. Coleman related to patient care which had nothing to do with his age. Dr. Desai testified that she had forgotten about the conflicts between Plaintiff and Dr. Coleman when she selected Dr. Coleman for the panel. While Plaintiff argued that Dr. Desai's testimony "defies common sense," this court does not agree. Dr. Desai supervised many physicians and easily could have forgotten a conflict in which she had little involvement. However, giving the Plaintiff the benefit of any reasonable inferences which can be made from the facts presented, this court concludes that the most it can possibly infer is that Dr. Desai made an unwise decision to include Dr. Coleman on the interview panel and Dr. Coleman gave Plaintiff low scores because of animosity toward Plaintiff. The problem is that, according to

13

Plaintiff's own testimony, Dr. Coleman's animosity was not based upon Plaintiff's age.  See Wilson v. Nicholson, 2009 WL 458613, at *4 (N.D. Ill. 2009) (any bias by one of the interviewers was not evidence of discrimination where the alleged bias was completely unrelated to race, age or sex).  In addition, it is undisputed that every one of the panel members gave Plaintiff the lowest scores so eliminating Dr. Coleman as a panel member would have made no difference.[6]

This court concludes that the evidence Plaintiff has relied on does not show that he was discriminated against on the basis of his age during the interview process.  See Leonard v. E. Ill. Univ., 614 F. Supp. 2d 918, 931 (C.D. Ill. 2009).  This court concludes that Plaintiff has no direct or circumstantial evidence of age discrimination and cannot avoid summary judgment under the direct method of proving age discrimination.

This court also concludes that Plaintiff cannot avoid summary judgment based upon the indirect method of proving age discrimination.  The four elements of the prima facie case in a failure-to-promote context are: (1) that the plaintiff was a member of a protected class; (2) that he was qualified for the position; (3) that he was rejected for the position; and (4) that the position was given to a person outside the protected class who was similarly or less qualified than he.  Stockwell v. City of Harvey, 597 F.3d 895, 901 (7th Cir. 2010).  If the plaintiff has made out a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the

---

[6] This court notes that Plaintiff has insisted throughout these proceedings that Dr. Roberts was Dr. Coleman's "ally" and that Dr. Coleman influenced the scores Dr. Roberts gave Plaintiff's answers.  The only fact Plaintiff has cited as a basis for this argument is that Dr. Roberts' scores were identical to Dr. Coleman's scores for Plaintiff.  This court rejects this argument as completely unsupported.  At his deposition, Dr. Roberts thoroughly explained the reasons for his low scores for Plaintiff's answers to the interview questions.  While Plaintiff clearly does not agree that his answers should have received such low scores, Plaintiff has no evidence showing that Dr. Roberts was influenced by Dr. Coleman in scoring Plaintiff's answers.  Moreover, there is absolutely no basis for concluding that any influence could possibly have been based upon Plaintiff's age.

employment action. Stockwell, 597 F.3d at 901. This is a light burden and, once the employer has articulated a legitimate, nondiscriminatory reason for its decision, the presumption of discrimination falls away. Stockwell, 597 F.3d at 901. The plaintiff then has the burden of producing sufficient evidence to show that the employer's proffered reason is pretextual. Stockwell, 597 F.3d at 901. In order "to show pretext, a plaintiff must show that (1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reasons was based on a discriminatory intent." Stockwell, 597 F.3d at 901, quoting Fischer v. Avanade, Inc., 519 F.3d 393, 403 (7th Cir. 2008); Perez v. State of Ill., 488 F.3d 773, 777 (7th Cir. 2007). If the plaintiff uses indirect evidence to meet his burden, he must show that the employer's reason is not credible or factually baseless. Stockwell, 597 F.3d at 901. The plaintiff must also provide evidence that supports the inference that the real reason was discriminatory. Stockwell, 597 F.3d at 901-02. "At the end of the day, the question is simply whether 'the same events would have transpired' if [Plaintiff] 'had been younger than 40 and everything else had been the same.'" Senske v. Sybase, Inc., 588 F.3d 501, 507 (7th Cir. 2009), quoting Gehrig v. Case Corp., 43 F.3d 340, 344 (7th Cir. 1994).

In this case, Plaintiff has argued that the reason given by Defendant for not promoting him to the position is a pretext for discrimination. This court therefore will focus on the issue of pretext. See Senske, 588 F.3d at 507. In an attempt to show pretext, Plaintiff has presented lengthy, lengthy arguments regarding after-the-fact statements made by Dr. Desai in response to Plaintiff's EEO complaint. Plaintiff insists, again and again, that Dr. Desai "lied" and was obviously trying to cover up evidence that Plaintiff was not promoted based upon his age. Plaintiff argues that one can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision. See Appelbaum v. Milwaukee Metro. Sewerage Dist., 340 F.3d 573, 579

(7th Cir. 2003). This court has carefully and thoroughly reviewed the evidence Plaintiff has relied upon and finds no basis for the nefarious import Plaintiff has attempted to give statements attributed to Dr. Desai. This court completely agrees with Defendant that the challenged statements are factually correct and do not contradict in any way Dr. Desai's statements in her deposition that age and Dr. Chani's position as acting Chief of Medical Service were not factors in the selection of the permanent Chief of Medical Service. See Chiaramonte, 129 F.3d at 401-02 (even though different language was used, decisionmaker's deposition testimony was entirely consistent with his statement to the IDHR).

Plaintiff has also argued that, because the selection process was flawed and because Plaintiff was so much more qualified than Dr. Chani, the promotion decision must have been based upon Plaintiff's age and the stated reason for the decision was a pretext for discrimination. This court concludes that Plaintiff's criticisms of the interview process fall far short of showing pretext. Plaintiff has complained that he was not given a copy of the list of questions during the interview and Dr. Chani had the list of questions. At his deposition, Plaintiff testified that he did not have a copy of the list of questions and there is some evidence, though certainly not conclusive evidence, that Dr. Chani did have a copy of the questions. This court concludes that this evidence is not sufficient to call the process into question. Plaintiff did not testify that he did not understand the questions and has not shown that he would have given better answers if he was provided a list of the questions. Plaintiff certainly has not shown that having a copy of the list of questions would have caused his scores to increase by 262 points, the difference between Dr. Chani's score of 376 and Plaintiff's score of 114. Plaintiff also claimed in his Declaration that he was not given instructions prior to the interview. As this court noted previously, information regarding the performance based

interview process was available at the VA Hospital and was utilized by Dr. Chani. Plaintiff cannot blame the process for his failure to take advantage of available information. Moreover, Plaintiff testified at his deposition that the "process was not related to age."

In making his arguments regarding the selection process, Plaintiff has argued that this case is similar to Thanongsinh v. Bd. of Educ., 462 F.3d 762 (7th Cir. 2006). This court does not agree. In Thanongsinh, the plaintiff, who was of Asian descent, was demoted from a position as a custodian which he had held for many years and for which he was well qualified. Thanongsinh, 462 F.3d at 767-68. The evidence showed that, in order to retain the position, the plaintiff was required to take and pass an exam. The plaintiff did not bring materials that he was required to bring to the exam and received a score of zero for that portion of the test, apparently simply because he did not have the materials. Thanongsinh, 462 F.3d at 775. However, a white candidate for the position who also failed to bring his testing materials was questioned and received ten out of a possible ten points on that test portion. Thanongsinh, 488 F.3d at 775. Additionally, the plaintiff presented evidence indicating a discriminatory bias, including evidence that a decisionmaker made a comment that the plaintiff "should learn better English" close in time to the alleged act of discrimination which could reasonably be interpreted as probative evidence that the decisionmaker "harbored animus against persons for whom English is a second language." Thanongsinh, 462 F.3d at 768, 782. In this case, unlike Thanongsinh, Plaintiff was given the opportunity to answer all the questions during the interview and this court has concluded that there is no evidence from which one could infer that Plaintiff's age was a consideration in the interview process. See Perez, 488 F.3d at 779.

As far as the candidates' relative qualifications for the position, Plaintiff has not disputed that all five candidates were qualified for the position. It is not this court's role to compare Plaintiff's

qualifications to Dr. Chani's qualifications.[7] This court notes that "[m]ere comparison of relative qualifications cannot establish an illicit motive unless 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Stockwell, 597 F.3d at 907 n.9. Plaintiff cannot make this showing. He has not disputed that Dr. Chani was qualified for the position. Moreover, the promotion decision was based upon the candidates' scores on the performance based interviews and Dr. Chani was well prepared and received the highest scores. While Plaintiff obviously believes he was the most qualified and should have been promoted, it is the perception of the decisionmaker that is controlling. See Stockwell, 597 F.3d at 903; Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 398 (7th Cir. 1998). A plaintiff's own opinions about his qualifications are not sufficient to cast doubt on the legitimacy of his employer's proffered reasons for its employment actions. See Brown v. Ill. Dept. of Natural Res., 499 F.3d 675, 684 (7th Cir. 2007); Wilson, 2009 WL 458613, at *4. In this case, the decision was based upon the scores from the interviews of the five candidates and Dr. Chani had the highest score and Plaintiff had the lowest score.

This court concludes that Plaintiff has not presented any evidence which could support a finding of pretext. Based upon the evidence in this case, this court concludes that no reasonable jury could find that Plaintiff's age was the real reason behind the promotion decision. See Senske, 588 F.3d at 511; Hnizdor v. Pyramid Mouldings, Inc., 2010 WL 1752544, at *7 (N.D. Ill. 2010). At the end of the day, if Plaintiff had been younger than 40 and everything else was the same, he still would have had the lowest interview scores and would not have received the promotion.

---

[7] This court is not "a super-personnel department that sits in judgment of the wisdom of an employer's employment decisions." Appelbaum, 340 F.3d at 579.

IT IS THEREFORE ORDERED THAT:

(1) The clerk is directed to substitute Eric K. Shinseki for Gordon H. Mansfield as the proper Defendant in this case.

(2) Defendant's Motion for Summary Judgment (#41) is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff.

(3) Defendant's Motion for Leave to File Defendant's Amended Reply to Plaintiff's Alleged Facts (#88) is MOOT.

(4) This case is terminated.

ENTERED this 28th day of May, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE